UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKOLE BOUSLOG,<br><br>    Plaintiff,<br><br>  v.<br><br>CARE OPTIONS MANAGEMENT PLANS AND SUPPORTIVE SERVICES, LLC, dba COMPASS; COMPASS, LLC, dba COMPASS; COMPASS SLS & ILS, LLC, dba COMPASS; RAVONNE OLIVER; REGIONAL CENTER OF THE EAST BAY, INC.; and CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES,<br><br>    Defendants. | No. C 20-00756 WHA<br><br>**ORDER OF DISMISSAL OF ENTIRE ACTION** |

**INTRODUCTION**

In this disability-discrimination action where plaintiff alleges she received substandard and abusive care from her 24-hour caretaker, defendants move to dismiss under Rule 12(b)(6) and Rule 12(b)(1). For the following reasons, the entire action is **DISMISSED**.

**STATEMENT**

Enacted in 1977, the Lanterman Developmental Disabilities Services Act establishes a comprehensive scheme for providing services to those with developmental disabilities. It establishes an array of services and supports to meet the needs and choices of each person with developmental disabilities, regardless of age or degree of disability, and to support their integration into the mainstream community throughout their lifetime. It enumerates legal rights retained by persons with developmental disabilities, including the right to treatment and

habilitation services in the least restrictive environment and the right to dignity, privacy, and human care with treatment and services provided in natural community settings as much as possible. CAL. WELF. & INST. CODE §§ 4501–4502.

The California Department of Developmental Services contracts with nonprofit public benefit corporations registered with the Attorney General's office to establish and operate a network of 21 regional centers. These regional centers remain responsible for determining eligibility, assessing needs, and coordinating and delivering direct services to developmentally disabled persons and their families. Designed on a service coordination model, regional centers must assist persons with developmental disabilities and their families in securing services that maximize opportunities and choices for living, working, and learning within the community. Developmental Services allocates its state funds to the centers for operations and purchasing services. WELF. & INST. §§ 4640.7(a), 4620–4622, 4629–29.7, 4631, 4639.5.

The Lanterman Act designates Developmental Services as a state agency with jurisdiction over the execution of the laws relating to the care, custody, and treatment of developmentally disabled persons. It must monitor regional centers to ensure compliance with federal and state law and support regional centers in achieving compliance and providing high quality services and supports to consumers. WELF. & INST. §§ 4416, 4434(a) & (b), 4500.5(d), 4501.

The individual program plan ("IPP") procedure determines the specific rights of persons with developmental disabilities and the corresponding obligations of Developmental Services. A planning team comprising of the developmentally disabled person, her or his legally authorized representative, and one or more regional center representatives develop the IPP. The goals and objectives developed through the IPP process should maximize opportunities for the individual to be part of community life, enjoy increased control over her or his life, acquire positive roles in community life, and develop the skills to accomplish the aforementioned. WELF. & INST. §§ 4512(j), 4646–4648, 4646.5(a)(2).

The Lanterman Act provides a specified procedure for any issues arising from services rendered thereunder. Any recipient of services dissatisfied with any decision or action of the

2

regional center can resolve those issues through informal meetings, mediation, or a fair hearing. The Lanterman Act delineates the procedures required to provide a fair administrative hearing. If the recipient chooses a fair hearing, each party remains bound by the final administrative decision and either party may appeal the decision to a court of competent jurisdiction. WELF. & INST. §§ 4706, 4710.5–4710.9, 4711.5, 4712.5.

Ordinarily, a case like the instant one would be brought under the administrative procedures of the Lanterman Act then proceed in state court. Evidently, plaintiff did not seek relief under the Lanterman Act's administrative procedures or state court and is trying to go directly to federal court by asserting claims under Title II and Title III of the ADA and Section 504 of the Rehabilitation Act.

The facts are as follows. Plaintiff Nickole Bouslog has suffered and continues to suffer from cerebral palsy such that she experiences severe paralysis and requires an electric wheelchair for mobility, a computerized assistive device for communication, and 24-hour care. For over 20 years she has lived independently in the community with the aid of 24-hour staffing provided by Regional Center of the East Bay, Inc. Regional Center has offices in San Leandro, California, and Concord, California. It contracted with Care Options Management Plan and Supportive Services, LLC, dba Compass to provide Bouslog with the 24-hour care service she required. Compass assigned one of its employees as Bouslog's caretaker (Compl. ¶¶ 14, 17, 19, 21, 67–68).

Plaintiff's independent living ended when her caretaker allegedly neglected and abused her by failing to provide enough food and water, failing to bathe her regularly, creating filth in her home, and leaving her unattended for extended hours. After the neglect and abuse began, plaintiff could not communicate it to anyone because employees of Regional Center and Compass never met with Bouslog outside of her caretaker's presence and never conducted unannounced visits to her home. Her poor condition went unnoticed until her parents arrived at her home to take her to a pre-scheduled surgery to remove a kidney stone. Upon seeing her, they immediately took her to the hospital where she remained for one week before discharge.

It remains unclear whether this one-week stay occurred because she had surgery to remove a kidney stone (*Id*. ¶¶ 23–25, 27–30, 34, 36).

Plaintiff alleges violations of Title II and III of the ADA, Section 405 of the Rehabilitation Act, California Government Code § 11135, the Unruh Act, the California Disabled Persons Act, the Ralph Civil Rights Act, the Elder Abuse & Dependent Adult Civil Protection Act, and negligence, against her caretaker, her caretaker's employer, Regional Center, and Developmental Services. Plaintiff, however, does not bring a grievance under the Lanterman Act in her claim for relief and comes directly to federal court. The issue remains whether there is a basis for federal subject-matter jurisdiction. To make that determination, this order must first determine whether an individual grievance by a developmentally disabled recipient of services provided under the Lanterman Act states a claim for relief under Title II and III of the ADA and Section 405 of the Rehabilitation Act. This is a novel issue. This order follows full briefing and oral argument.

**ANALYSIS**

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject-matter jurisdiction. Federal courts are courts of limited jurisdiction with authority to hear cases involving a federal question and diversity cases. 28 U.S.C. §§ 1331–1332. The party asserting jurisdiction bears the burden of establishing jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal citations and quotations omitted). The court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal citations omitted).

Three defendants have independently moved to dismiss plaintiff's claims. Defendants Care Options Management Plans and Supportive Services, Developmental Services, and

4

Regional Center all move to dismiss under Rule 12(b)(6). Regional Center additionally moves to dismiss under Rule 12(b)(1).

### 1. PLAINTIFF'S STATE CLAIMS.

Defendant Regional Center argues that this Court lacks subject-matter jurisdiction because plaintiff's claims arise under the state Lanterman Act, which requires that plaintiff exhaust her administrative remedies, and she fails to do so here (Dkt. No. 21-1 at 5). CAL. WELF. & INST. CODE § 4500 *et seq.* (2019). This order agrees.

In pertinent part, Section 4502 of the California Welfare and Institutions Code provides that persons with developmental disabilities have a right to "treatment and rehabilitative services and supports in the least restrictive environment." Section 4502.1 provides that the "right of individuals with developmental disabilities to make choices in their own lives requires that all public and private agencies receiving state funds for the purpose of serving persons with developmental disabilities, including, but not limited to, regional centers, shall respect the choices made by a consumer." Plaintiff has severe cerebral palsy that renders her significantly paralyzed such that she requires an electric wheelchair for mobility, a computerized assistive device for communication, and 24-hour care. Plaintiff alleges that "she qualifies for services mandated by the Lanterman Act" as implemented by Developmental Services and Regional Center (Compl. ¶¶ 14, 16–17). This order agrees with plaintiff that she qualifies for services mandated by the Lanterman Act and received such services.

The Lanterman Act, however, provides a specified procedure for any issues arising from services rendered. In pertinent part, Section 4706 provides that "all issues concerning the rights of persons with developmental disabilities to receive services under this division shall be decided under this chapter." Section 4710.5(a) provides that any recipient of services "who is dissatisfied with any decision of action of the service agency . . . shall . . . be afforded an opportunity for a fair hearing." The statute also provides means to resolve issues through informal meetings and mediation prior to an administrative hearing. WELF. & INST. §§ 4710.5–4710.9, 4711.5. The statute then delineates the procedures to provide a fair administrative hearing. WELF. & INST. §§ 4710–4712. Particularly, Section 4712.5 provides that each party

5

remains bound by the final administrative decision and either party may appeal the decision "to a court of competent jurisdiction."

While the language of the statute remains sufficient to deny jurisdiction, this order will provide a brief recitation of California cases supporting this finding. *Conservatorship of Whitley* held that it would "not permit the substitution of a judicial hearing" to resolve plaintiff's claims "instead of the administrative fair hearing remedy provided to [plaintiff] in the Lanterman Act." The court reasoned that the "remedy provided for in the Lanterman Act [was] exclusive and jurisdictional." *Conservatorship of Whitley*, 155 Cal. App. 4th 1447, 1461 (2007). *Harbor Regional Center* upheld *Conservatorship of Whitley* when it determined that the Lanterman Act's "fair hearing procedures are a claimant's exclusive remedy for issues relating to the provision of services, which must first be exhausted before seeking judicial relief in the superior court." *Harbor Reg'l Ctr. v. Office of Admin. Hearings*, 210 Cal. App. 4th 293, 312 (2012) (internal citations and quotations omitted). *In re Williams* determined that the "administrative fair hearing procedures should be used to resolve any challenge [conservator] has to the facility the regional center ultimately may select for [plaintiff] and the services to be provided at that facility. The trial court should not resolve any such challenges in the first instance" *Michelle K. v. Superior Court*, 221 Cal. App. 4th 409, 444 (2013).

Thus, all of plaintiff's state claims are **DISMISSED**. The remaining federal claims are for violations of the ADA and Rehabilitation Act, and are addressed below.

2. **DEVELOPMENTAL SERVICES' MOTION TO DISMISS.**

Developmental Services argues that plaintiff fails to state a claim under Section 12101 *et seq.* of Title 42 of the United States Code or Section 794 *et seq.* of Title 29 of the United States Code because she fails to allege discrimination by reason of her disability (Dkt. No. 31 at 8).

To state a claim of disability discrimination under Title II, "the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by

6

the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015). "Title II of the ADA was expressly modeled after" Section 504 of the Rehabilitation Act. "A plaintiff bringing suit under [Section] 504 must show (1) he [or she] is an individual with a disability; (2) he [or she] is otherwise qualified to receive the benefit; (3) he [or she] was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (internal citations omitted), *as amended on denial of reh'g* (Oct. 11, 2001). Because Section 504 of the Rehabilitation Act incorporates all four elements required for a claim under Title II of the ADA, if plaintiff fails to allege her claim under Title II of the ADA, she will also fail to allege her claim under the Rehabilitation Act.

The complaint alleges that plaintiff continues to be disabled and qualifies to receive services from Developmental Services under the Lanterman Act. The complaint alleges that "[b]ecause of [plaintiff's] extensive disabilities, she relied entirely on Compass, the supported living company hired by [Regional Center], which failed to provide equal access to the programs, services and activities as required." It alleges that plaintiff's caretaker denied her services and "was unwilling to meet [plaintiff's] needs or accommodate her disabilities" because the caretaker only cleaned if a representative from Compass or Regional Center planned to visit; left garbage bags of urine and used adult diapers on the floor; left plaintiff alone at night for up to twelve hours; refused to bathe plaintiff regularly; used cold water to bathe plaintiff; and refused to provide plaintiff enough food or water. The complaint additionally alleges that Regional Center denied plaintiff its services by failing to follow its policies of meeting with plaintiff outside her caretaker's presence and conducting unannounced visits to plaintiff's home. It lastly alleges that Developmental Services "in overseeing the provision of [Regional Center's] services" violated Section 504 of the Rehabilitation Act by denying plaintiff "health and social services by reason of her disability" (Compl. ¶¶ 4, 16, 22, 24–25, 34, 36, 89).

7

1    Plaintiff argues in her briefing that Developmental Services' "policy or practice of *not*
2    meeting its regulatory obligations or ensuring [Regional Center] met its regulatory obligations
3    disparately impacted [p]laintiff because of her unique level of disability" (Dkt. No. 37 at 16).
4    Additionally, at oral argument on the motions, plaintiff argued that the Court should follow
5    *Crowder* and find a violation of the ADA. *Crowder* held that Hawai'i imposing a 120-day
6    quarantine on carnivorous animals entering the state to prevent importation of rabies "was a
7    policy, practice[,] or procedure that discriminated against visually-impaired individuals by
8    denying them meaningful access to state services, programs[,] and activities by reason of their
9    disability in violation of the ADA," even though it applied to everyone. *Crowder* reasoned that
10   the policy effectively prevented visually impaired persons from enjoying the benefits of state
11   services and activities by removing their guide dogs. *Crowder v. Kitagawa*, 81 F.3d 1480,
12   1482, 1484–85 (9th Cir. 1996) (internal citations and quotations omitted). Here, plaintiff does
13   not and cannot allege the existence of any such policy because no such policy exists.

14   The fundamental problem is that the alleged course of conduct was not a denial of
15   services by reason of plaintiff's disabled status. Yes, she was denied services, and yes, her
16   disability suffered as a result. But the denial itself was not predicated on her status as disabled.
17   In fact, due to her status as disabled, she was awarded services (but the service provider failed
18   to execute correctly). Thus, defendant Developmental Services' motion to dismiss plaintiff's
19   claims under Title II of the ADA and Section 504 of the Rehabilitation Act is **GRANTED**.

20   **3.    REGIONAL CENTER'S MOTION TO DISMISS.**

21   ***A.    TITLE III.***

22   Regional Center argues that plaintiff fails to state a claim under Section 12182 *et seq*. of
23   Title 42 of the United States Code because Regional Center does not operate as a place of
24   public accommodation (Dkt. No. 27-1 at 11).

25   To prevail on a claim under Title III of the ADA, plaintiff must establish that:

26   (1) he [or she] is disabled as that term is defined by the ADA; (2)
     the defendant is a private entity that owns, leases, or operates a
27   place of public accommodation; (3) the defendant employed a
     discriminatory policy or practice; and (4) the defendant
28   discriminated against the plaintiff based upon the plaintiff's

8

> disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017) (internal citations omitted). For the same reason as above, the poor service provided to plaintiff was not discrimination based on the disability. Defendant Regional Center's motion to dismiss plaintiff's claim under Title III of the ADA is **GRANTED**.

### B. SECTION 504.

Regional Center argues that plaintiff fails to state a claim under Section 794 *et seq*. of Title 29 of the United States Code because she fails to allege discrimination based on her disability and it does not receive federal funding. Regional Center argues that plaintiff merely pleads that her disability caused reliance on Regional Center but never pleads "that her disability itself was the reason for the discrimination" (Dkt. No. 27-1 at 14–16). For the reasons already stated, this order agrees. Thus, defendant Regional Center's motion to dismiss plaintiff's claim under Section 504 of the Rehabilitation Act is **GRANTED**.

### 4. INJUNCTIVE RELIEF.

Developmental Services argues that plaintiff fails to allege facts supporting injunctive relief because she does not allege a likelihood of future injury or a likelihood of immediate irreparable injury. It additionally argues that plaintiff fails to describe the specific acts sought to be restrained required under Rule 65(d) (Dkt. No. 31 at 9–10). Since the action will otherwise be dismissed, this order need not and will not reach this issue.

## CONCLUSION

For the foregoing reasons, the entire action is **DISMISSED**. Due to futility, no further attempts to replead will be allowed. The Clerk shall **CLOSE** the file.

**IT IS SO ORDERED.**

Dated: May 9, 2020.

WILLIAM ALSUP
United States District Judge